UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
NAKYE GUY,                                 :
                                           :
          Petitioner,                      :   Civ. No. 14-2771 (RBK)
                                           :
     v.                                    :   **OPINION**
                                           :
WARDEN JOHN SHARTLE,                       :
                                           :
          Respondent.                      :
_____:

**ROBERT B. KUGLER, U.S.D.J.**

## I.  INTRODUCTION

Petitioner is a federal prisoner currently incarcerated at F.C.I. Fairton in Fairton, New Jersey. He is proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner claims that he is entitled to prior jail time credits toward his federal sentence for time he spent while incarcerated in state prison. He asserts that he should now be released from federal prison because he has fully served his federal sentence as a result of the time he spent in state prison that should be counted towards his federal sentence.

This case turns on the issue of whether the state relinquished primary custody jurisdiction over petitioner at the time of his state sentencing hearing. If so, then petitioner argues that the U.S. Marshals had a ministerial duty to take petitioner into federal custody at that time so that petitioner could begin serving his federal sentence. Nevertheless, because the state did not relinquish primary custody jurisdiction over petitioner at his state sentencing hearing, petitioner did not begin to serve his federal sentence until he was actually paroled from his state sentence. Accordingly, for the reasons that follow, the habeas petition will be denied.

1

## II. BACKGROUND

On July 5, 2006, petitioner pled guilty to one count of narcotics conspiracy in violation of 21 U.S.C. §§ 812, 841 in the United States District Court for the Southern District of New York. (*See* Dkt. No. 1-1 at p. 183.) On October 3, 2006, petitioner was sentenced to fifty-five months imprisonment on this federal charge. (*See id.* at p. 184.) Petitioner was out on bail at the time he received this federal sentence. At this sentencing, United States District Judge Deborah A. Batts continued the existing bail and ordered petitioner to surrender to the Federal Bureau of Prisons ("BOP") on January 12, 2007. (*See id.*)

On October 9, 2006, after the federal sentence was imposed, but while petitioner was still out on bail, petitioner was arrested and charged with robbery in the State of New York. Petitioner was detained at Riker's Island in light of this state charge.

On October 11, 2006, Judge Batts revoked petitioner's bail on the federal conviction and issued the following order:

> WHEREAS, the defendant was sentenced on October 3, 2006, to a term of 55 months' imprisonment and ordered to voluntarily surrender on January 12, 2007 as a result of the sentence imposed;
> WHEREAS, the defendant was re-arrested on October 9, 2006 in Manhattan, New York and charged with robbery in the first degree and criminal possession of a weapon in the third degree, among other things;
> WHEREAS, the defendant is currently incarcerated at a facility on Riker's Island as a result of the arrest, but bail has been set; therefore, it is hereby
> ORDERED that the defendant's bail on the federal case, 06 cr. 113 is REVOKED and the defendant is remanded to federal custody upon his release from Riker's Island.

(Dkt. No. 1-1 at p. 198.) On August 13, 2007, Judge Batts issued a warrant for petitioner's arrest to answer to a charge for revocation of his bail. (*See id.* at p. 200.) The U.S. Marshals sent a federal detainer to Riker's Island on August 21, 2007. (*See id.* at p. 202.) The detainer notified

Riker's Island that an arrest warrant had been issued by the Southern District of New York against petitioner and that the U.S. Marshals should be notified before petitioner was released from their custody. (*See id.*)

Petitioner was not released from state custody after his initial arrest on October 9, 2006. Petitioner subsequently pled guilty to robbery in the Supreme Court of New York, New York County. On September 11, 2007, petitioner received a ten-year state sentence on that robbery conviction. The state judge stated as follows at sentencing:

> I made a promise. Sentence of the Court as promised is ten years in jail, five years post release supervision. However, the negotiated plea during this period of time will run concurrently with approximately the fifty-seven month sentence you're doing in the federal courts. I believe that number is 06-CR113. . . .
>
> And, I'm informed that the federal authorities are here in court. I will parole the defendant into federal custody so they can take him back over there so they can do the report.

(Dkt. No. 1-1 at p. 31.) The federal agents did not take petitioner into their custody at this time. Instead, petitioner remained with the state authorities and was transferred from Riker's Island to Green Haven Correctional Facility so that he could serve his state sentence.

Petitioner then sought to ensure that his state sentence would run concurrently with his federal sentence. He first sought relief in state court by bringing a motion to vacate his state conviction under New York Criminal Procedure Law § 440.10. The motion was denied without prejudice and the state court directed that petitioner seek a remedy from federal authorities. (*See* Dkt. No. 1-1 at p. 210.)

Petitioner then sought a request from the Southern District of New York for a *nunc pro tunc* designation with respect to where he was serving his federal sentence pursuant to *Barden v. Keohane*, 921 F.2d 476, 483 (3d Cir. 1990) (stating that the BOP has statutory authority under 18

3

U.S.C. § 3621 to *nunc pro tunc* designate the place of confinement for a prisoner's federal sentence). On February 14, 2013, the Southern District of New York recommended that petitioner not receive such a *nunc pro tunc* designation. (*See* Dkt. No. 1-1 at p. 137.) After this recommendation was made by the Southern District of New York, the BOP conducted its review pursuant to 18 U.S.C. § 3621(b)[1] and determined that a retroactive designation of state prison for service of petitioner's federal sentence was not appropriate. (*See* Dkt. No. 9-1 at p. 52.)

Petitioner then once again sought to vacate the state court judgment in state court after his *nunc pro tunc* request was denied by the BOP. At a hearing on that motion, the prosecutor agreed to reduce the robbery conviction to attempted robbery. Petitioner was then resentenced to seven years instead of the previously ordered ten-year state sentence. (*See* Dkt. No. 1-1 at p. 214-20.)

---

[1] Section 3621(b) states as follows:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering –
>
> (1) the resources the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence –
>     (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>     (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).

Petitioner was paroled from his now reduced seven-year state conviction on May 2, 2013. It was at this time that he was then taken into federal custody. Petitioner was first taken to MDC Brooklyn and then to F.C.I. Fairton where he is presently incarcerated.

The BOP has computed petitioner's federal sentence as commencing on May 2, 2013, the date that he was released from his New York State sentence through parole. The BOP's website currently lists petitioner's scheduled release date as April 27, 2017. *See* http://www.bop.gov/inmateloc/ (last visited on January 6, 2014).

Petitioner filed the instant habeas petition on April 30, 2014 through counsel. Petitioner summarizes his argument in support of his habeas petition as follows:

> Mr. Guy's federal sentence began to run as a matter of law no later than September 11, 2007, when Mr. Guy was released by a state court to the custody of federal authorities present in the courtroom. The federal agent's failure to perform their ministerial duty pursuant to two federal court orders directing them to take Mr. Guy into custody did not prevent the federal sentence from beginning to run. As a matter of law, Mr. Guy's sentence expired no later than April 11, 2012.

(Dkt. No. 1 at p. 8.) Respondent filed an answer in opposition to the habeas petition. Respondent concedes that petitioner has exhausted his administrative remedies. (*See* Dkt. No. 9 at p. 23.) Petitioner filed a reply in support of his habeas petition as well as a request for oral argument.

### III. DISCUSSION

A. <u>Habeas Jurisdiction</u>

Section 2241 "'confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence." *Cardona v. Bledsoe*, 681 F.3d 533, 536 (3d Cir. 2012) (*Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 241 (3d Cir. 2005) (quoting *Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2005))) (footnote omitted). The execution

5

of one's sentence includes such matters as the computation of a prisoner's sentence by prison officials. *See Woodall*, 432 F.3d at 242 (citing *Jiminian v. Nash*, 245 F.3d 144, 147 (2d Cir. 2001)). As petitioner is challenging the computation of his federal sentence, this matter is properly before this Court as a § 2241 habeas action.

B. Analysis

Petitioner asserts that his fifty-five month federal sentence began to run at the time of his state sentencing hearing on September 11, 2007. More specifically, petitioner states that his federal sentence began to run on that date as he "was paroled by a state court judge into the custody of federal officers then present in the state judge's courtroom who had orders from a federal judge to take [petitioner] into custody." (Dkt. No. 1-3 at p. 12-13.) According to petitioner, the federal officers failed in their ministerial duty to take him into custody on September 11, 2007, thereby effectively starting his fifty-five month federal sentence on that date. Petitioner predominantly relies on three cases, *Smith v. Swope*, 91 F.2d 260 (9th Cir. 1937), *United States v. Croft*, 450 F.2d 1094 (6th Cir. 1971) and *Kiendra v. Hadden*, 763 F.2d 69 (2d Cir. 1985) to support his ministerial duty argument. Respondent contends that petitioner was in state custody at the time of his state sentence and that the state never relinquished primary custody jurisdiction over petitioner until May 2, 2013, when he was paroled on his state conviction.

Because the state never relinquished primary custody jurisdiction until petitioner was paroled on May 2, 2013, *Smith, Croft and Kiendra* are distinguishable for the reasons discussed *infra*.

      i.    *Primary Custody Jurisdiction*

The primary custody or primary jurisdiction doctrine "relates to the 'determination of priority and service of sentence between state and federal sovereigns.'" *George v. Longley*, 463 F. App'x 136, 138 n.4 (3d Cir. 2012) (per curiam) (citing *Taylor v. Reno,* 164 F.3d 440, 444 n.1 (9th Cir. 1998)). "Custody is usually determined on a first-exercised basis, *see Reynolds v. Thomas*, 603 F.3d 1144, 1152 (9th Cir. 2010), and can be relinquished by granting bail, dismissing charges, and paroling the defendant. Custody can also expire at the end of a sentence." *George*, 463 F. App'x at 138 n.4 (citing *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005)); *see also Davis v. Sniezek*, 403 F. App'x 738, 740 (3d Cir. 2010) (per curiam) (citation omitted).

While petitioner concedes that he was not paroled in the sense that he had served a portion of his sentence and had been released by the parole board, he claims that the state sentencing judge still released him from state primary custody jurisdiction through his words and actions at his state sentencing. The problem with this argument is that the state never actually relinquished primary custody jurisdiction over petitioner until he was actually paroled on May 2, 2013. When Judge Batts granted petitioner bail on October 2, 2006, she relinquished federal primary custody jurisdiction over petitioner. *See George*, 463 F. App'x at 138 n.4. The state then obtained primary custody jurisdiction over petitioner upon his arrest for state charges on October 9, 2006. The state then could relinquish that jurisdiction through granting petitioner bail, parole, dismissing the charges or by petitioner completing his state sentence. *See id.* None of these things occurred until petitioner was actually paroled from his state conviction on May 2, 2013.

The state judge's use of the term "parole" at petitioner's state sentencing is unfortunate, but the use of that phrase in no way entitles petitioner to habeas relief based on his arguments presented in this petition. Clearly, petitioner was not placed on parole at the time of his state sentencing. The state judge issued a judgment against petitioner for a ten-year concurrent sentence. Thus, it is clear that the state judge intended petitioner to serve a state sentence. Additionally, by initially imposing a ten-year sentence to run concurrent with petitioner's shorter federal sentence, the state judge presumably intended petitioner to serve his remaining sixty-five months on his state sentence after his federal sentence was complete. Therefore, while the state judge used the term "parole" at sentencing, his statement amounts to nothing more than a recommendation that petitioner serve his state sentence in federal prison. This recommendation did not relinquish the state's primary custody jurisdiction over petitioner as he was not paroled at that time. The state judge's statement is merely a recommendation that is insufficient to warrant granting federal habeas relief. *Accord Leal v. Tombone*, 341 F.3d 427, 427-28 (5th Cir. 2003) (per curiam) (rejecting argument that U.S. Marshals were legally obligated to deliver petitioner to federal prison for service of concurrent state sentence ordered by state to be served in federal prison); *Del Guzzi v. United States*, 980 F.2d 1269, 1270 (9th Cir. 1992) (per curiam) (state judge's statement that state sentence may be served in federal prison and recommendation that he be transported on the first available transportation does not warrant federal habeas relief as state judge's authority was limited to sending petitioner to state prison to serve his state sentence).

    ii.    *Smith, Croft & Kiendra*

Petitioner's argument that federal authorities had a ministerial duty to take him into federal custody at his state sentencing relies heavily on three federal cases; specifically: (1) *Smith,* (2) *Croft* and (3) *Kiendra.* A brief synopsis of these cases is important due to petitioner's

heavy reliance on them in his briefs. However, for the reasons that follow, the Court finds that they are distinguishable and/or not persuasive to warrant granting federal habeas relief.

    a. Smith

In *Smith*, two indictments containing several counts were brought against the petitioner in the United States District Court for the Southern District of California. *See* 91 F.2d at 261. Petitioner pled guilty in both cases. *See id.* On the first indictment, the petitioner received three years imprisonment and on the second indictment he was sentenced to three years imprisonment to commence at the expiration of the first sentence. *See id.* The petitioner received his sentence on June 2, 1930, and the commitment specifically commanded the marshal to deliver the petitioner to the custody of the warden of a U.S Penitentiary. *See id.* However, the U.S. Marshals held the petitioner at the County Jail in Los Angeles, apparently on a state charge of forgery that had been filed against him in state court. *See id.* On June 31, 1930, the petitioner pleaded guilty and was sentenced to one to fourteen years on the state charge. *See id.* The petitioner was released on parole by the State on June 16, 1935, and then placed into federal custody. *See id.*

The issue, as stated by the Ninth Circuit in *Smith*, was "[w]hen a defendant is sentenced to prison and the marshal having him in custody is ordered to deliver him to the prison 'forthwith' and fails to do so until five years later, is the prisoner's service of sentence deemed to begin at the time of his sentence and the commitment and custody thereunder by the marshal, or at the date of the of the tardy actual commitment to prison." *See id.* at 261-62. The Ninth Circuit determined that the marshal in that case was a ministerial officer and that the petitioner was entitled to have his federal sentence served from the date he was ordered to serve *if he was in the custody of the marshal under commitment*. *See id.* at 262 (emphasis added). The Ninth

Circuit noted that any other holding would give the marshal, as a ministerial officer, arbitrary and capricious power over petitioner's sentence. *See id.*

*Smith* is distinguishable from the instant case. In *Smith*, the federal court never relinquished primary custody jurisdiction over the defendant. Thus, when the federal court ordered the Marshals to deliver the Smith to the federal penitentiary, the Marshals in fact had a ministerial duty to effectuate the federal judge's order. However, in this case, and unlike in *Smith*, the Southern District of New York relinquished primary custody jurisdiction over petitioner when it released him on bail after he received his federal sentence. *See George*, 463 F. App'x at 138 n.4 (stating that custody is normally determined on a first-exercised basis but can be relinquished by the granting of bail, dismissing charges, paroling defendant or at the expiration of a sentence) (citing *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005); *see also*, 403 F. App'x at 740 ("Generally, a sovereign can only relinquish primary jurisdiction in one of four ways: 91) release on bail; (2) dismissal of charges; (3) parole; or (4) expiration of sentence.") (internal quotation marks and citation omitted).

The state *could have* relinquished its primary custody jurisdiction over petitioner if petitioner had been released on bail, the charges were dismissed, petitioner was paroled or if he completed his state sentence. As previously explained, however, none of these occurred at petitioner's state sentencing. It was not until petitioner was actually paroled on May 2, 2013 on his state conviction that the state relinquished its primary custody jurisdiction over petitioner. Accordingly, *Smith* is distinguishable from the instant case because petitioner was not in federal primary custody jurisdiction at the conclusion of his state sentencing hearing.

b.  Croft

Croft was arrested on April 2, 1969 by a U.S. Marshal for knowingly concealing a stolen car and moving it in interstate commerce. *See Croft*, 450 F.2d at 1095.  He was released on bond the same day. *See id.*  On September 25, 1969, Croft was arrested on a state charge of burglary and then detained at the Jefferson County Jail. *See id.*  Because of that state arrest, the federal court issued a writ of habeas corpus *ad prosequendum* in order to bring Croft before the federal court to answer to the federal charge. *See id.*  On October 13, 1969, Croft appeared in federal court, pleaded guilty, was sentenced to three years imprisonment and was immediately committed to imprisonment. *See id.*  Croft was then returned to the Jefferson County Jail. *See id.*  On November 13, 1969, Croft was sentenced to a term of two years each on his two separate state charges. *See id.*  These two state sentences were to run concurrent to each other and concurrent to the three-year federal sentence. *See id.* at 1096.  However, Croft was taken to the state penitentiary to serve his two concurrent state sentences. *See id.*  After serving ten months of the state sentence, Croft was paroled and taken by the U.S. Marshals to federal prison to commence his three-year federal sentence. *See id.*

The Sixth Circuit noted that if Croft had been delivered by the U.S. Marshal to federal prison, he would have only served three years as opposed to the five years he was currently facing. *See id.*  The Sixth Circuit further explained that "where a court has issued a mittimus and has given authority to the proper officer to enforce it, and such officer refuses to act on it, and turns the prisoner over to another jurisdiction, the court, after the period specified in the mittimus has expired, will refuse to find that the prisoner has not served his sentence, but will assume that he has served it, and will, in consequence, refuse authority for his further imprisonment." *Id.*  The Sixth Circuit determined that even though Croft had been released on bail, he was still

considered in the custody of the federal government as the bail did not divest the federal court of its inherent power to deal with Croft.  *See id.* at 1098.  Accordingly, the Sixth Circuit held that Croft was entitled to credit on his federal sentence for the time he was held in county jail after the federal court's order of commitment.  *See id.*

This Court is not persuaded that *Croft* merits granting petitioner habeas relief in this case.  As one court has noted, in *Croft*, "the Sixth Circuit . . . held that when a defendant is charged with a federal offense and released on bail, the federal government does not lose its primary jurisdiction." *Taylor*, 164 F.3d at 444.  However, as the Ninth Circuit noted in *Taylor*, *Croft* created a split on the issue of whether the grant of bail causes the federal government to lose primary custody jurisdiction over a defendant who is released on bail.  *See Taylor*, 164 F.3d at 444-45 (citing *Roche v. Sizer*, 675 F.2d 507 (2d Cir. 1982)).  Indeed, like the Second and Ninth Circuit, courts in this Circuit have held that a sovereign relinquishes primary custody `jurisdiction by releasing a defendant on bail as was done in this case by Judge Batts when she released petitioner on bail on October 3, 2006.  *See George*, 463 F. App'x at 138 n.4; *Davis*, 403 F. App'x at 740 (citing *Cole*, 416 F.3d at 897).  Furthermore, the fact that Croft was then before the federal court pursuant to a writ of habeas corpus *ad prosequendrum* does not help petitioner's cause in this case.  Indeed, "a prisoner detained pursuant to a writ of habeas corpus ad prosequendum remains in the primary custody of the first jurisdiction . . . 'unless and until the first sovereign relinquishes jurisdiction over the prisoner.'" *see Williams v. Zickefoose*, 504 F. App'x 105, 107 n.1 (3d Cir. 2012) (per curiam) (quoting *Rios v. Wiley*, 201 F.3d 257, 274 (3d Cir. 2000); *see also Reyes v. Samuels*, No. 06-3819, 2007 WL 655487, at *5 (D.N.J. Feb. 23, 2007) ("A sovereign does not relinquish authority by producing a state prisoner for sentencing in

a federal court via a writ of habeas corpus *ad prosequendum*.") (citations omitted). For these reasons, petitioner's reliance on *Croft* is unpersuasive.

       c. Kiendra

In *Kiendra*, the petitioner was incarcerated at a Rhode Island state penitentiary when he was convicted and sentenced to three years in federal court of interstate transportation of stolen motor vehicles. *See* 763 F.2d at 70. The federal court directed that his sentence commence when he was released from his state sentence and the U.S. Marshals lodged a detainer with the state correctional office on March 27, 1981. *See id.* Kiendra was released from his state sentence on September 16, 1981, but the U.S. Marshals told the state authorities that they had no interest in him and no longer wanted to assume custody. *See id.* On October 20, 1981, Kiendra was arrested on a state charge and ultimately pleaded guilty. The state judge, aware of the federal detainer, sentenced him to a four-year prison term to be served in a federal penitentiary and to run concurrently with his federal sentence. *See id.* at 70-71. The U.S. Marshals were notified but again declined to take custody of Kiendra such that he was placed in a state penitentiary. *See id.* at 71. On October 28, 1982, Kiendra requested that his sentence be clarified and the state court reaffirmed his sentence and ordered his immediate transfer to federal custody. *See id.* The U.S. Marshals again took no action. *See id.* It was not until Kiendra completed his state sentence on February 17, 1984 that U.S. Marshals took him into custody to begin serving his three-year federal sentence. *See id.*

The Second Circuit determined that Kiendra's federal sentence began to run on September 16, 1981, when he was released from the state sentence he had been serving. *See id.* at 73. The Second Circuit found *Smith* instructive on this issue. *See id.* The only difference between that case and *Smith*, as stated by the Second Circuit, was that in the *Kiendra* case, the

13

Marshals did nothing instead of actually turning the defendant over to state authorities. *See id.* However, this distinction made no difference according to the Second Circuit. *See id.* Additionally, the Second Circuit noted that by not taking Kiendra into custody on September 16, 1981, the U.S. Marshal's frustrated the intentions of both the state and federal court. *See id.*

*Kiendra* also does not warrant a finding granting petitioner habeas relief in this case. *Kiendra* was no longer in state custody upon his release from his state sentence. However, unlike *Kiendra*, petitioner in the instant case remained in state custody after his state sentencing as the charges against him were not dismissed, he was not released on bail, he was not paroled nor did he complete serving his state sentence. Thus, while the U.S. Marshals in *Kiendra* may have had a ministerial duty to pick up Kiendra on September 16, 1981 because he had completed his state sentence, the U.S. Marshals in this case possessed no such duty up until petitioner was actually paroled from his state sentence on May 2, 2013.

The parties in this case argue over whether the BOP's decision regarding petitioner's release date frustrates the intentions of the federal and state courts. However, it is worth noting Judge Batts illustrated the federal court's intention that the federal sentence not run concurrent to petitioner's state sentence in recommending that petitioner's *nunc pro tunc* request be denied. Thus, it does not appear that the BOP's computation of petitioner's sentence frustrated the federal court's intent. Furthermore, it is worth noting that petitioner's original state sentence was for ten years (before it was reduced) to run concurrent to his federal sentence, and that is approximately the amount of time petitioner will be incarcerated in total. Indeed, petitioner was initially sentenced on his state conviction in 2007, and is currently due to be released from federal incarceration in 2017. Accordingly, at a minimum it does not appear that the BOP's computation of petitioner's sentence would have frustrated both the federal *and* state court's

intentions as petitioner argues. Therefore. for these reasons, *Smith*, *Croft* and *Kiendra* do not support granting federal habeas relief in this case.

      iii.      *Relevant Persuasive Authority*

A more analogous case to the case at bar than *Smith*, *Croft* or *Kiendra* is *Del Guzzi*. In that case, the petitioner pled guilty to a federal charge in August 1985 and was ordered to self-surrender in one month. *See Del Guizzi*, 980 F.2d at 1270. Before he was due to turn himself in, the petitioner was arrested in California and a state judge sentenced him to a seven-year term to be served concurrent with his five-year federal sentence. *See id.* The state sentencing judge recommended that petitioner be transported to federal prison to serve his concurrent terms. *See id.* However, Del Guzzi was not transported to federal prison even though federal officials were informed of his presence in state prison. *See id.* The federal officials declined to accept him on the grounds that they would take custody of him only after he completed his state sentence. *See id.* After completing his state sentence on April 17, 1989, Del Guzzi was released from state custody and immediately accepted into federal custody. *See id.* Del Guzzi had spent three years and seven months in state custody and petitioned federal officials to credit his state time against his federal sentence. *See id.* Federal officials declined his request, maintaining that his federal sentence began on the day he arrived at the federal prison. *See id.*

Ultimately, the habeas petition was denied. The Court noted that the state sentencing judge only had the authority to send petitioner to state prison to serve his state sentence. *See id.* Accordingly, the Ninth Circuit determined that Del Guzzi's federal sentence began on April 17, 1989, when he was received at the federal prison. *See id.i*

Like *Del Guzzi*, petitioner in this case was out on bail when he was arrested by state authorities. Accordingly, upon his arrest by state authorities he then fell under state primary

custody jurisdiction. The state sentencing judge did not have the authority to order the federal officials to take primary custody jurisdiction over petitioner. That authority would have come from Judge Batts' order and the federal detainer. However, those only became effective to establish federal primary custody jurisdiction over petitioner upon such relinquishment of state primary custody jurisdiction by the state. That did not occur until May, 2013 when petitioner was paroled from his state sentence.

While petitioner's arguments in this case have some surface appeal, federal primary custody jurisdiction was not established again until May, 2013. It was at that time that petitioner was taken back into federal primary custody jurisdiction to begin serving his federal sentence. The BOP's determination of petitioner's sentence is not in error. Judge Norris' warning in his concurrence in *Del Guzzi* is as true today as it was back then and bears repeating here:

> State sentencing judges and defense attorneys in state proceedings should be put on notice. Federal prison officials are under no obligation to, and may well refuse to, follow the recommendation of state sentencing judges that a prisoner be transported to a federal facility. Moreover, concurrent sentences imposed by state judges are nothing more than recommendations to federal officials. Those officials remain free to turn those concurrent sentences into consecutive sentences by refusing to accept the state prisoner until the completion of the state sentence and refusing to credit the time the prisoner spent in state custody.

*Del Guzzi*, 980 F.2d at 1272-73 (Norris, J., concurring).

### IV.   CONCLUSION

For the foregoing reasons, the habeas petition is denied.[2] An appropriate order will be entered.

DATED:  January 7, 2015                                          s/Robert B. Kugler
                                                                 ROBERT B. KUGLER
                                                                 United States District Judge

---

[2] Petitioner's request for oral argument will also be denied in light of the fact that petitioner has failed to show that he is entitled to federal habeas relief for the reasons stated *supra*.